Good morning, your honors. I'd like to reserve five minutes for rebuttal. I remind you that it goes down. Thank you, sir. My name is Brian Boonder. I represent the appellant, Mr. Ralph Stanley Cooper, and with me is my co-counsel, Ms. Mary Ann Dugan. May it please the court and counsel, three issues are on appeal. The first issue being whether seizure of a rental car in which plaintiff or appellant was passenger constituted violation of his Fourth Amendment rights against unreasonable search and seizure. The second issue is whether the court erred in granting summary judgment for defendant and against plaintiff's claims for racial profiling in violation of the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. Section 1981. The third issue being whether or not the district court should have dismissed plaintiff's case after plaintiff had brief contact with the juror over the lunch hour. Does the third issue subsume the other two? The judge, the two partial summary judgments, if you will, that you're complaining about, weren't final orders. And as I read the judge's final order in this case, it's dismissing the action with prejudice. So if we thought the judge was correct for dismissing the action with prejudice, would we have to get to whether or not the previous summary judgment orders were correct? Well, Your Honor, what I think is that you don't think he was correct. I'm asking just a threshold question, which is that isn't that the primary question in this case? We don't get to. It is, Your Honor, and we will get to it. But I think what's important is the second issue being Appellant's racial profiling claims implicate timely and very important public policy issues. And with respect to whether or not the case should have been dismissed with prejudice, the Court should have considered important public policy considerations such as racial profiling, and I believe that speaks to the jurish factors that Appellee will rely upon in order to uphold the dismissal. So with the other two, I think the third issue is that I take your point that in looking at whether the judge should have granted the sanction, the judge might have thought about the public policy issues in the case. But if we think the judge was correct in granting the sanction, then we don't need to determine whether or not he was correct in granting the partial summary judgments, do we? Well, Your Honor, that issue isn't briefed here. I'd be happy to submit a supplemental brief on that issue. Particularly, I don't think I'd concede that whether or not the third issue and the second issue is proper necessarily. No, we're not asking you to concede it. I'm reading his order, and the judge says the magistrate judge says this action is dismissed with prejudice. There's no discussion in the order about the prior summary judgments. And so I think what the judge was saying is you're out of court. I'm throwing out your complaint in its entirety. Isn't that a fair reading of what the judge said? That is a fair reading, Your Honor. That's my understanding. So I'm sorry, take these in whatever order you want to take them. But to me, the central issue is the sanctions issue. Thank you. And I will address that in turn. So with respect to the racial profiling claims, the Equal Protection Clause prohibits selective enforcement of the law, and it prohibits selective enforcement of the law based on race in traffic stops. And while pretext traffic stops aren't necessarily unlawful, for instance, if an officer is pursuing a drug interdiction mission and witnesses a valid traffic infraction or has some other reasonable suspicion of illegal activity, then, of course, he can stop the vehicle, and if he then subsequently develops additional reasonable suspicion, he can extend the stop. Well, but no part of that reasonable suspicion and no amount should be based on race. Indeed, the central purpose of the Fourteenth Amendment is to prevent discrimination based on race.  that's a very good point. Are your equal protection claims in this case, are the damages alleged from the equal protection claims in this case any different than the damages alleged from the unlawful detention claims? No. And the unlawful detention claims survive summary judgment? The one of the unlawful detention claims survives summary judgment. Right. So what I'm trying to figure out is what the practical effect of excluding your equal protection claim was in this case. The judge before the sanctions was ready to let your claim that your client was damaged because he was illegally detained to go to the jury. I'm trying to figure out what damages your client would have had from the equal protection violation other than the illegal detention. It's almost a philosophical question, Your Honor. I mean, what is your Fourteenth Amendment right worth to you? I'm trying to figure out if you were prejudiced by the judge's what you say is a justice or a ruling. Absolutely we were. In what way? We were prejudiced because we couldn't put before the jury evidence of the officer's discriminatory intent and purpose when he stopped our client because he was African-American. The precise issue on whether or not the Court should have granted summary judgment on the equal protection claims boils down to the summary judgment standard that the Court applied. They took it from Bingham v. City of Manhattan Beach, and it is to avoid summary judgment, a defendant must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance the evidence the decision was racially motivated. During argument on summary judgment, the district judge asked whether or not we had more than just inference evidence, and then in the order dismissing our racial profiling claims, the district judge stated that in order to sustain plaintiff's claim, the record must contain specific acts or statements upon which a claim of discrimination can be based. So it seems like the issue for the district judge was you can't overcome summary judgment on a racial profiling claim unless you have direct evidence of discrimination based on race. Scalia, what was the evidence here? The evidence was, I think at best, that this officer probably knew before stopping these individuals in these cars that they were African-American. Actually, Judge, there was an enormous amount of evidence on the record that the judge did not. Tell me what evidence other than the knowledge of the race is there. Thank you, sir. First of all, it's undisputed that our client is African-American and a member of a protected class, and that was available to the court. Beyond that, defendants submitted at Clerk's Record 38, Exhibit V, the video of the stoppage in entirety, and that was available to the court. The plaintiff and the other passenger stopped at approximately 6.51 a.m. in Roseburg, Oregon. Minutes into the stop, the defendant calls for a criminal history check. He explains a cover car is en route. Then there's a pause and, quote, three BMAs detained in the vehicle. BMAs are black male adults. Why was it necessary for the officer to present to his dispatch that three BMAs were detained when he's asking for a criminal history check? A jury could reasonably infer that three BMAs was justification for calling for a criminal history check, which would be evidence of discriminatory purpose or intent, because clearly whether the race of someone is not justification for whether or not they have a criminal history. The three BMAs' comment could be justification for why he called a cover car. For the moment, just tell me what facts you have as opposed to arguing irrelevant. I mean, you have it. Okay. So let me go. He knew they were African-American males. Okay. So let's run down the facts. He identified them as such when he called back to dispatch. What else? He identified he had three BMAs detained in the vehicle when he called dispatch. At the end of the stop, he's – there's a transcript from the audio where he's on the phone or the radio with dispatch. And at 9.04 a.m., the last thing he says is, quote, black male. Then there's some inaudible words we can't hear. And then, quote, I believe for tonight. That's the second fact. Third fact is the undiscovered prior bad acts that weren't available to us because the defendant didn't discover them to us, where defendant has a history of racial discrimination, which we found while we were briefing this appeal. He had stopped a gentleman of the Sikh faith and took him out of his semi-truck and told him that he wouldn't. How can we consider that information? Well, I think the Court can take judicial notice of it. I think the Federal Rules of Evidence. We can take judicial notice of what? The newspaper article, which is – Of a newspaper article. Yes, sir. So that's self-authenticating under the rules that defendant has a history of racial discrimination. Newspaper articles are the kinds of things of which we would normally rely and make decisions. Rule 902, yes, sir. What – I'm trying to figure out the last time I relied on a newspaper article making – I mean, you may have a new trial motion to make down there for newly discovered evidence, but I'm not sure how we take judicial notice of newspaper articles for the truth of the matter asserted in the article. No, it's – well, for purposes of why it's relevant and admissible, you'd look to rule – No, it may well be relevant and admissible if you try to admit it somewhere. You're asking us to take judicial notice of a newspaper article. Well, under 201 – And take judicial notice of the accuracy of the things asserted in the article. Right? Well, no, Your Honor. Just the fact that there's – Well, because if they're not accurate, I don't care about them. I think it's important that there's an undiscovered prior bad act for a number of reasons. I mean, I – It's an undiscovered bad act because the newspaper says so. Well, the defendant failed to discover it to us, which further seems to implicate whether or not he had discriminatory purposes or intent. And you may have a new trial motion, but you're asking us on this appeal to treat a newspaper article as true under judicial notice. Well, even assuming you can't. Because can you find another case ever that told us to treat a newspaper article as true under judicial notice? I don't. There's not a case on point. I can't find it. There's not. No, no. And we did try. There's not a case on point with respect to a newspaper article. I don't have the same on that one, so okay. So moving on, there's additional facts. At 651 a.m., immediately after the officer stops the passengers in their vehicle – and I'm not going to save any time for rebuttal at this point. I'll keep going. He asked the men why they got off the freeway. Where are they going? I'll tell you what interests me most, is him throwing your case out. That's really an extraordinary remedy. I'd love to address that, Your Honor. There's a case directly on point, and that case is Rinker v. Napa Valley. It's a case out of the Ninth Circuit where Mr. Rinker, in a 1983 civil rights action, approached a juror and told this person that if they had any questions, he would be happy to answer them for them. The case was decided on its merit. Defendants appealed, and on appeal, the Court remanded it for a new trial because the holding was that this type of misconduct is prejudicial to the opposing party. Why is Rinker on its merit? Rinker is a case where the judge didn't sanction, let the case go to the jury, and on appeal, we said you shouldn't have done that. But we didn't say the judge couldn't have dismissed the case for that sanction. Absolutely. Well, Rinker is distinct from the cases that are cited by defendant in terms of Rinker deals with a jury incident. None of the cases you're interested in. No, I understand. Rinker is helpful in the sense that it makes clear that what your client did is sanctionable conduct. At least given the facts found by the judge. But it doesn't make clear what the appropriate remedy is. The court of appeals probably doesn't have the power to dismiss the case simply because of the conduct. Why does it why we review this under an abuse of discretion standard. Why did the judge abuse his discretion in this case in dismissing? Certainly. Well, first of all, cases that implicate important public policy decisions should weigh against dismissal. That comes from a police brutality case, which is a police misconduct case, much like racial profiling, also a brand or a type of police misconduct. That's Dahl v. City of Huntington Beach. We didn't brief that. It's at 84 F. 333. Moreover, the court cites to an order it gave, where the order is actually the instructions he gave to the jury after they'd been sworn. And that's not what the district judge had a hearing and made a finding, and he said that your client made this contact with the juror, the intent of the contact was to influence the juror, and that the juror was intimidated by it.  intent to influence the juror. But that's a finding the judge made after talking to the relevant people. So given that finding, why isn't dismissal of the case an appropriate sanction? Well, Your Honor, our position is that a mistrial is appropriate because the facts in the record don't support prejudice to defendant. The cases cited by defendant deal with violation of orders, and this is respecting contact with a juror over the lunch hour, brief contact. For all these reasons, we think that the important public policy implications of the racial profiling claim, even considering the five factors of the Juris test, weigh for defendant. I mean, in 30 seconds, the public's interest in expeditious resolution of litigation that always weighs in the favor of defendant, clear. The courts need to manage its docket. Well, that weighs for the court and its order. But the final three factors weigh in favor of plaintiff. Risk of prejudice to defendant if the action of claim is not dismissed. There's no finding of prejudice to defendant because this was about whether or not the contact was improper. I see I'm out of time. I would just invite you to watch the video at CR 38. Roberts. Okay. We'll hear from the other side, but we'll give you a minute to respond. Thank you, sir. Good morning, and may it please the Court. Cecil Renner Smith on behalf of Trooper Bennett. The district court did not abuse its discretion when it dismissed. Was the well poisoned by the attempt to get two witnesses to agree to the same testimony? Did that poison the well so that, by God, this is a second time and you're not getting away with it a second time? That was certainly something that Judge Coffin took into consideration when dealing with the jury, the contact with the juror, because of the trial. How far along were you? In the trial? It was halfway through the second day of trial. Trooper Bennett had spent all of the first day and half of the second day on the stand as a witness. Why couldn't what happened, apparently happened in Riker, happen here? Okay. I hear your motion for a new trial. We'll wait until the end. We'll go through the trial, and depending on the result, you may be delighted with the result, and you don't want a mistrial. That's one thing that the judge could have done, right? Well, the State did not ask for a mistrial. The defendant asked for dismissal. I understand, but the judge is supposed to consider alternative remedies, correct? Correct. And this is, as Judge Walter said, a pretty severe sanction. Yes. Why isn't the appropriate sanction at this point in the trial, two days in, you can start right over again, pick another jury, a mistrial? It's very clear from Judge Coffin's order that he did consider the possibility of a mistrial and rejected it because, as he put it, to start the clock over again when all of this has passed, and with the knowledge that this wasn't plaintiff's first attempt to skew the trial. Tell me, remind me what that attempt was. Wasn't it just as to the reason for going to their final destination, for friendship's sake, or some other reason, or that was the conflict, was why they were going? What had happened was that the defense had subpoenaed Mr. Holmes, who was one of the other passengers in the car, to get his testimony about what happened and why they were going and what they were doing. Plaintiff and Mr. Holmes had a telephone conversation in which Mr. Holmes told the plaintiff, I've been subpoenaed, and plaintiff said, yeah, they just want to, you know, see if our stories are straight, at which point Mr. Holmes says, well, I don't really remember why we were going up there. And at that point, the two men engaged in a conversation, well, was it to visit friends, maybe it was to see a basketball game, maybe it was to visit friends. And then at the deposition, Mr. Holmes testified, indeed, that they had gone up to Portland to visit friends and see a basketball game. Absent that event, and the judge said, I'm not going to give any sanctions because I wasn't going to let anybody testify about whether we're up there anyway. Correct. Absent that event, would the dismissal of this case as a sanction for the juror contact have been an abuse of discretion? No. OK, so put that event aside for a second. I'm trying to focus on some of the issues your opponent was talking about. The prejudice would just simply be to start the trial over again, right? Well, to start a trial over again with a new jury. Right. So all the expense. Is there any special prejudice here other than the normal prejudice of a mistrial, which is to say, were there witnesses who wouldn't be able to show up the second time, or would additional expense be visited on? Well, certainly additional expense. The additional expense of continuing, starting another new trial. I'm sorry. Isn't there a third alternative of saying, OK, I've noted I'm taking the possibility of dismissal or mistrial under advisement, but let's go ahead. I'm going to admonish the jury and do my best there. And let's wait and see what the jury does. Maybe you're going to win, in which case, we'll finish. The problem with what happened in this case is that once the plaintiff had his encounter with the jury, the record shows that the juror was very, very upset. And she was crying when she was speaking to the court about the encounter. She had gone back and told all the other jurors what had happened. And as Judge Coffin pointed out, that infected the jury. What would have happened was, when they got a jury verdict, we would not be able to know if it was based on something completely inappropriate, if it was not based on the law. So even if it was. Judge Alvin Rubin had a comment about instructing juries to ignore. He said that you throw a skunk in the jury box, and then you tell them, ignore the smell. And it just — I understand it would have been very hard to give such a limiting instruction, but that is a possibility, is it not? It is a possibility, but the fact that there are more than one legally correct answers doesn't mean that choosing another one of those answers is an abuse of discretion. I mean, discretion is the Court's ability to choose between legally correct actions. And I suppose in light of rancor, Judge Coffin might well have said, well, my problem is if I let it go to the jury and the plaintiff prevails, it's probably going to get sent back to me to declare a mistrial. Well, possibly. But he could grant it. He could grant the mistrial after that. And, you know, I'd like to point out that — Could he not? I'm sorry? He could have — if it went against you, then you said, you didn't cure the jury, I move for a mistrial, he could have granted it then. He could have, or he could have denied it. It would have been the position, the posture on appeal would have been much different. So it's very difficult for me right now to say off the top of my head how we would have approached it at that point. So focus on the sanction here. This is the most extreme sanction. Why does this conduct deserve the most extreme sanction? There are some — there's some misconduct for which dismissal would not be appropriate. There may be some misconduct for which the dismissal would be appropriate. Tell me why this conduct falls on one side of the line or the other. Do you want me to ignore the previous motion for dismissal at this point or not? And I take it the judge says, look, I've already had a bad experience with you. And now I've had a second one. So — and I — this makes me more — I think the judge said, this makes me more willing to believe that the second one was deliberate and not inadvertent, and therefore I don't accept your explanation that it was just, you know, an inadvertent, hi, how are you. I accept the juror's explanation that it was intentional and that you glared at her and you meant to intimidate her. Assume all that's true. Help me on finding case law or something that says this falls on the dismissal side of the line as opposed to the mistrial side of the line. I believe it's the Anheuser-Busch case. But there — the case law in this circuit has been that certain actions which are deliberate violations of a court order can be the basis for a dismissal. And what Judge Coffin found here was that the plaintiff's contact with the juror was deliberate and that the plaintiff knew that he'd been ordered not to do it, and that — And when you say was ordered not to do it, was that the order to the jurors not to have contacts with witnesses in the parties? Well, and what the Court said to the jurors was don't be offended or if they don't talk to you, because they have been ordered not to. And so — But is there anything in the record that shows that, in fact, he had been ordered to do it? He was there present hearing the admonition of the jurors. We have that. Right. But is there anything in the record in which the judge actually orders the parties not to contact the jurors? Only the Court's statement to the jurors that he had indeed ordered him to. And — So I think that most we have is that he was supposed to be listening and understanding from that that he's not supposed to be talking to the jurors. And, of course, if he had been listening, he would have understood that. Well, except that when the Court said to the jurors they'd been ordered to, there was no comment from either party that, no, you didn't order us that. And later in the arguments about whether or not dismissal was appropriate — But was he even present when — I'm sorry? Anything in the record that he was even present when the jury was being instructed? It was by — I mean, he didn't have to be there, right? It was at the beginning of trial. Well, the magistrate judge's — He was there and he doesn't have to listen, right? Well, the magistrate judge's order says he was there. Yes. So we have the statement from the magistrate judge. I'm not sure we have anything else to tell us that. What we have is the magistrate judge's statement about who was there and what was said, and it is not my recollection of any of the arguments that were made or of the briefing that anyone has ever argued that there wasn't an order that was violated. Well, I see no order. I mean, there's nothing in the record that tells me that he was directly ordered. There's obviously an inference that he was ordered, but there's no — I see no evidence that he was ordered to talk to the jury. I mean, is there something missing? Is there part of the transcript that we don't have? It may be part of the transcript that wasn't ordered. The Court doesn't have, to be perfectly honest, when I read the judge's statement to the jurors saying that they've been ordered not to talk to you, I took the judge for his word. There's a local rule that provides that. Is there any evidence that the parties were, you know, asked to abide by the local rules or anything like that? I mean, I take it counsel was on notice because there's a local rule, and counsel should have been on notice. And I don't know whether the local rule requires counsel to tell his client or not. Is there anything in the record that helps us on that? Whether he was directly aware of the local rule, there is no evidence of that. But and I have to admit, I have not briefed this, but it is my understanding that the fact that you're not aware of the local rule, if you are represented by counsel, is not something that doesn't protect you. Does it matter whether there was a prior order? In other words, let's assume that this colloquy had not occurred with the jury. The judge had not said stay away from people. And Mr. Cooper just contacted a juror. Would a sanction be in order then? A sanction would still be in order. It might change the analysis slightly, partially because there is case law that talks about how a court can go straight to dismissal without considering other sanctions for deliberate violation of court orders. If you take that out of the equation, you still have the five jurish factors. And in this case, three of those five factors do weigh heavily toward the dismissal sanction, and that's sufficient under this Court's case law. Here's what bothers me about this case. Putting to one side whether under the law there's a possibility of escaping summary judgment on the equal protection claim. This case just jumps out at us that this was a case of being stopped for driving while black. We had three black men pulling off the freeway in Roseburg early in the morning. The policeman sees them pulling off, follows them, follows them to the gas station. There was something that was said in the gas station, none of it particularly consequential.  They're from Oakland. Maybe they are surprised that Oregon doesn't allow self-service anywhere, which I confess all Californians find surprising. Believe me, I wish I could pump my own gas. They then drive a little further. He puts on his blinker, maybe not 100 feet in front of when he changes lanes, but he puts on his blinker in order to move over into the left turn lane. I mean, this is clearly a pretextual stop. Anybody with a half a brain knows that this is driving while black. He then extends the stop for a very long time. He then, after he's let them go quite reluctantly, calls down to Redding and saying, I think you've got some guys coming off the bus who are carrying drugs. And then we get this dismissal because he encounters a juror in the restaurant, and the worst thing that he could have said was, don't fall asleep. That's what she says. The best thing he could have said is what he said, which is, it was awful hot in there, I was having trouble, I'm hoping you're staying awake like I'm having, and I'm having trouble, too. And then the judge dismisses the case. This just doesn't sit right. I appreciate the court's concern about the way this case looks. But I would disagree that it so clearly smells of a racially motivated illegal stop, and that everything that flowed from there. Well, I preface this by saying, I'm not sure under the law that he has a case that he can get past summary judgment on driving while black. because our law on that is very strict in favor of the stopping officer. On the other hand, we all know what happened, and anybody who understands the world in which we live says that's driving while black. I'm not sure I have a response to that, other than. Even assuming that this is a defensible case, the question is, why shouldn't the judge, at this case, go to a jury, whether in a new jury or the old one, as Judge Walter said? Why, we're trying to administer a system of justice here. Right. Why is justice served in this case by sending everybody home and not having a case adjudicated? So, I see I've run out of time. If I may answer the question. Please go ahead, because you get to talk as long as we're talking, and we're going to extend a little time so that they can have rebuttal, so don't feel constrained. Thank you, Your Honor. We can't ignore the first motion to dismiss when we get into that analysis. What Judge Coffin found here was, and he found as fact, based on his review of the record, that plaintiff had attempted to thwart the normal system of trial, first by trying to get a witness to make sure that their stories matched. And I agree that it's not the most- Match over something that's really de minimis. I went to a ball game, or I went to see friends. I don't even see them as mutually exclusive. Do you? They're not mutually exclusive. What the problem with what happened in those conversations was that Mr. Holmes at first said he had no idea. He couldn't remember why they were going up there. Extraordinary for friends to say, well, let me see if I can refresh your memory. It is extraordinary when one of the men on the telephone is a plaintiff in a civil action, and he's talking to someone who has been subpoenaed as a witness in that civil action and has said- And the witness says, gosh, I really don't remember. And he prefaced his conversation with the witnesses by saying, my attorney told me I shouldn't be calling you, but I'm not coaching you. But then when the friend said, I'm not sure, I can't remember, that's when coaching happened. I agree it is- I read that first statement as, if we were only talking about this thing and whether it was right or wrong, I think you've got a pretty good argument that that first statement is, I was told not to talk to you, and I'm not really talking to you, and I'm not coaching you. I'm just describing some stuff. You know what I'm saying? I take your point on that, but is it- Maybe I'm going to share a little bit of the proceeds of the case. Yes, well, and that is, I mean, and that's why all the transcripts are in the supplemental excerpts, so that this Court can read them in full the way that Judge Coffin did to understand fully what was going on in that conversation, that it wasn't just that little bit about why they were there. But you can't ignore that when looking at what happened later, where Judge Coffin again found based on both his credibility determination about what plaintiff was saying happened and his interviews with the witness, that the contact with the juror, I'm sorry, that the contact with the juror was so upsetting to the juror and so beyond what the plaintiff should have been doing, that it tainted the jury. I've got a question out of morbid curiosity. Did anybody ever demonstrate why these gentlemen were where they were? There's that quote in the transcript that said, I forgot why you were out there, even in the first place, and Cooper says, hey, you know, luckily it wasn't up on that, you know. It's not in the record. There's nothing in the record to demonstrate what that luckily was? It's not in the record, and so therefore, I don't think it would be appropriate for me to discuss it with this Court. Just asking about the record. No, it's not. One last thing I'd like to get to, even though my red light is on, and that is because Judge Hurwitz, your very first question about was the dismissal of the entire action or was it of just the case claim that had remained for trial, and how does that affect this Court's analysis of the summary judgment motions, I have to admit I didn't think about that until last night when I was preparing for argument. But I think that the answer, the correct answer, is that the dismissal of the action included the summary judgment orders, but those summary judgment orders themselves had already gotten rid of three of the four claims for relief, so that if this Court were to determine that the dismissal was inappropriate, it would still have to determine whether the grant of summary judgment on three of the four claims for relief was appropriate, because if it was, they would still be out of the question. Would we? This is what troubled me, and I know I've been extending the time, so I apologize to my colleagues here, but if this order of dismissal was inappropriate, then under Judge Coffin's view, there was one issue that remained for trial, or two issues, one issue. Correct. And the summary judgment orders themselves were not final. Correct. They would not be, so it's hard for me to view them as necessarily subsumed in the dismissal order if we find a dismissal order inappropriate. We'd simply send back the last one for trial, see how it came out, and then review the verdict. Or perhaps, I'm thinking this through. I don't know the answer. It hasn't been briefed, and so I'm thinking out loud. I'm thinking this through as I sit here, and I may end up not staying where I am at the moment with this question, but it's possible to evaluate the severity of the sanction if we read the order as, and think, I think, it says he dismisses the entire action, that is to say, not merely the trial, but the entire action, so the summary judgments are now gone, such that they are not appealable. He just dismissed the thing. And the question is, was that an appropriate use of the sanction? So the sanction now is not merely you've lost your trial, but you've lost the right to appeal your summary judgments. So it's a more severe sanction than just you're not getting a trial anymore. I don't think that it deprived him of the right to appeal from the summary judgment orders. Well, but if Judge Hurwitz's question carries with it the answer of, well, the judgment was a sanction with respect to the entire case, we judge the sanction then as not only you lost your trial, but you've lost the right to appeal because this is a sanction, and you don't have anything anymore. The flip side of that, and we're all thinking out loud here, is the sanction is not as severe if the judge simply said, I'm dismissing your fourth claim and go up and appeal on your first three. But he didn't say that. Yeah. And he didn't say that. And that's what, you know, that's why it occurs to me he must have dismissed all of them. And if he did, then if we sustain the sanction, we don't get to the summary judgment orders. If we overturn the sanction, I don't think we get to them either. I think we send it back, and we review a final judgment in the case. So that's a thought. I just raise it because I'd like to hear your opponent respond to it, if he has. And I'm thinking that, you know, given that this is something that all of us appear to be thinking about for the first time, that if that is a direction that the Court is thinking of going, or if it's an issue that may drive the rest of the Court's decision, it's something that I would like to be able to do further briefing on. I still don't think that's the case. And I have two questions in this. Maybe we'll issue an order, but if you do, I have two questions. One is, the first one I pose, which is that does the — if we upheld the sanction, do we need to get to the summary judgment orders? The second one would be, if we don't uphold the sanction, what do we do with respect to the summary judgment orders? Do we simply leave them in place, send the case back for trial on the remaining claim and wait until that's over, or do we review them now? I have some difficulty figuring out how we have the ability to review them now under either scenario, and that's why I'm — that's why I raised the question. Well, and I think that I'm not sure that I agree that because the dismissal of the action was a sanction, that that somehow would deprive plaintiff of ever being able to appeal from the earlier dismissal of his — three of his four claims under summary judgment because — at least the way I'm playing it out here in my head — is that the dismissal of the action was a general judgment of dismissal. But the — And that brings up all interlocutory orders with it? I'm sorry? Does that bring up all interlocutory orders with it? We're having our conference in front of you, which may be — Right. Which may be difficult, but the other thing that occurs to me is that if we were to look at the summary judgment orders and conclude that they were justified, then the level of the sanction here is somewhat lesser. So you see the problems, and we may want to ask you to brief them. I do see the problem. And, you know, if we had lost on the summary judgment motions because they were in part based on qualified immunity, then they would have been subject to interlocutory appeals. So that's just another whole crazy layer. But I'm far over my head. Thank you very much. And if we do want supplemental briefing, we will issue an order to that effect. Thank you. Okay. Thank you. Well, I promised you a minute. We took this date 9 minutes over. Why don't we put 3 minutes on the clock and see what happens? Thank you, Your Honor. So I've just got a few points. First of all, I think my opponent misstates the definition of prejudice, really. I mean, it seems they're conflating prejudice with inconvenience. Prejudice is more than inconvenience. Prejudice speaks to whether the outcome has been affected in terms of the fact-finding mission of a jury. I don't think the court's not limited to that. If great expense were going to be put on the other side, that would be prejudice. Great expense has been put on both sides, Your Honor. There's always an expense in a jury trial. And for that reason, resetting it by a day and a half wouldn't have been a great expense in terms of proportionally the work that had been put in by both sides in the months or years leading up to trial. Let's assume we have these five factors. Does it matter that you win on 3 and lose on 2 if the judge puts a lot of weight on the 2 and less weight on the 3? Well, Your Honor, I think it's our position that we win on three factors. Okay. Now, I'm saying, I'm accepting your argument. Your position is you win on 3 and you lose on 2. And the judge says, yeah, those three are here and these two are here. He's weighing. It's not a soccer match, right? Sure. And I think then you'd look to Rinker, because Rinker doesn't address the Erich factors. And under Rinker, you know, the issue is whether it was possibly prejudicial. Mr. Cooper's contact with the juror at lunch wasn't possibly prejudicial to anybody but Mr. Cooper. I mean, clearly, her reaction to Mr. Cooper's contact was pretty severe and would really work against Mr. Cooper in terms of whether she would be biased against him. Not necessarily. If he frightened her, that might influence her to vote for him. I suppose that's one way to see it, Your Honor. So is it perhaps, perhaps. Even if it's possibly prejudicial, I think under Rinker what we still look to is a mistrial. Rather than this other sanction. I also want to point out that below, the magistrate judge made no findings that plaintiff actually tampered with a witness. There were no sanctions. There was no findings of that. And, you know, as Your Honor has mentioned when they were describing the transcript of the call, I want to point out that plaintiff, Mr. Cooper, didn't call Mr. Holmes. Mr. Holmes called Mr. Cooper. He initiated that call. Mr. Holmes is in prison. Yes, sir. How easy is it for Mr. Cooper to call Holmes in prison? I think the way it's going to work is, the only way it's going to work is Holmes is calling out. That's my understanding of the Department of Corrections, Your Honor. I know it's not a similar situation. So there's not an ordinary phone call between two people sort of at liberty in the world. There was a phone call, and I think the only way that phone call could have occurred was for Holmes to initiate. I mean, that's possible. Most prisons work that way, and I can agree. So I'm not sure I want to attach the normal significance of the fact that Cooper didn't call. Well, you know, another piece of the call, Your Honor, is much of it is in the patois of urban African-American dialect, and it's not entirely clear what they're even talking about. I think, well, for all these reasons, Your Honor, I would ask that you allow us to take this case to a jury where it properly should be, because had the racial profile and claims been attached, I think we would have had a much different outcome. As we all know, most civil cases settle. Had the racial profiling claim been attached, I think we would have been in a better position for this case to resolve itself without having to go to a jury verdict. Okay. Thank you very much. Thank you, Your Honor. Well, thank both sides for their helpful and extensive arguments. Cooper v. Bennett, submitted for decision.
judges: Walter, Fletcher, Hurwitz